### S95G1174. GIBSON v. PREFERRED RISK MUTUAL INSURANCE COMPANY.
(467 SE2d 334)

PER CURIAM.

After plenary consideration of this matter, it is found not to satisfy the criteria for the grant of certiorari and the writ is therefore vacated.

*All the Justices concur, except Benham, C. J., Fletcher, P. J., and Sears, J., who dissent.*

BENHAM, Chief Justice, dissenting.

Pursuant to Art. VI, Sec. VI, Par. V of the Georgia Constitution, this Court has the authority to "review by certiorari cases in the Court of Appeals which are of gravity or great public importance." It was under these standards that we, without dissent, granted certiorari in this case. Vacation of certiorari should be a rare, rather than routine, occurrence, and should only occur when, after reconsideration, we determine that the case actually does not meet the above-stated criteria for granting certiorari. Unlike the majority, I do not believe that is so in this case. This case poses the pertinent question of when an insurance company has commenced a "defense" in an action. The Court of Appeals' opinion, though reaching the correct result, contains incorrect principles of law that could cause confusion for the bench and bar. This case should be decided on its merits as this Court intended when the writ of certiorari was granted.

The record indicates that Mary Gibson was involved in a traffic collision in which she was allegedly responsible for several persons'

injuries. At the time of the incident, Gibson held an automobile policy from Preferred Risk which provided bodily injury coverage to the extent of $25,000 per person and $50,000 per occurrence. In May 1990, Preferred Risk paid damages to two claimants, exhausting the policy's limit of liability.

In March 1992, two other persons asserted claims against Gibson for injuries sustained in the same accident. Gibson forwarded the claims to Preferred Risk. On March 13, 1992, Preferred Risk responded that settlement negotiations were underway and subsequently retained counsel to conduct those negotiations. On April 29, 1992, Preferred Risk sent Gibson a "notice of reservation of rights," which stated, inter alia, that Preferred Risk reserved the right to cease its representation at any time because the policy limit had been exhausted, and Preferred Risk, therefore, had no duty to defend or indemnify Gibson. The notice also informed Gibson that she could employ counsel of her own to represent her. On May 7, 1992, the attorney representing Gibson filed an answer on Gibson's behalf. On May 14, 1992, Preferred Risk filed an action for declaratory relief on the issue of whether it was obligated to continue defending Gibson since the policy's limits of liability were exhausted.

The trial court granted summary judgment to Preferred Risk, holding that the plain language of the policy, which states that there is no further duty to defend once the policy limits have been reached, relieved it of the duty to continue to defend. The Court of Appeals affirmed, but held that because Gibson was only seeking a defense and not coverage of any liability, and because Gibson suffered no prejudice by Preferred Risk's cessation of representation, the trial court properly held that it had no continuing duty to defend. We then, without dissent, granted Gibson's petition for certiorari.

Gibson contends that the Court of Appeals erred in distinguishing between her claim for a defense and her claim for coverage. She also argues that because Preferred Risk undertook to provide a defense before it issued a reservation of rights, it is estopped from denying coverage now.

We have held that the defense of noncoverage can be subject to the doctrine of waiver and estoppel "where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage . . . ." *Prescott's Altama Datsun v. Monarch Ins. Co.*, 253 Ga. 317, 318 (319 SE2d 445) (1984). In *Prescott's*, we concluded that "in the absence of a reservation of rights a liability insurer may waive and be estopped to assert a defense of noncoverage by assuming the defense of a suit against its insured (or former insured)," id., but we found as a matter of law that Monarch, the insurer in that case, did not waive the defense of noncoverage. Id. In reaching our decision, we relied upon the

fact that Monarch, which was co-counsel to Prescott's, did not answer the suit on behalf of Prescott's and only entered an appearance on the case, which, alone, did not create an estoppel. Id. We also noted that Monarch notified Prescott's of its reservation of rights, which was uncontested until after a declaratory judgment action was filed. Id. We further noted that Prescott's failed to show how Monarch's representation prejudiced Prescott's defense of the suit. Id. at 319.

On the issue of coverage, the Court of Appeals has held that "if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving its notice of reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage." *Jones v. Ga. Cas. &c. Co.*, 89 Ga. App. 181 (78 SE2d 861) (1953). In *Jones*, the insurer failed to send a notice of reservation of rights and was obligated, after defending the plaintiff until a judgment was entered, to issue coverage even though it asserted that the plaintiff was not covered by the policy. Although the Court of Appeals has distinguished the instant case from *Jones* by finding that Gibson seeks a defense and not coverage, I find the reasoning of *Prescott's* and *Jones* equally applicable to the duty to defend. In determining whether the Court of Appeals properly held that Preferred Risk had no continuing duty to defend, it is necessary to determine whether Preferred Risk's actions on behalf of Gibson estop it from withdrawing its representation. Thus, it is necessary to determine whether Preferred Risk's actions prior to giving the notice of reservation of rights constituted a "defense."

Contrary to *Jones*, where the insurer failed to send a notice of reservation of rights, Preferred Risk sent Gibson such notice prior to filing any formal pleading in the case. Thus, Preferred Risk's actions prior to sending the reservation of rights, similar to the insurer in *Prescott's* who only made an appearance in the case, were not significant. Although Preferred Risk began settlement negotiations, retained outside counsel for Gibson, and obtained an extension of time to file the answer, these actions do not constitute a "defense"; the commencing point of the defense was when formal pleadings were filed. Because such defense began under the reservation of rights, Preferred Risk was authorized to withdraw from representing Gibson on her claims.

Further, Gibson has failed to show how Preferred Risk's actions, prior to the issuance of the reservation of rights, prejudiced her defense. Gibson asserts that she was prejudiced by Preferred Risk's withdrawing from the defense at that point in the litigation because Preferred Risk's retained attorney lost Gibson the right to file a counterclaim by not filing such counterclaim with the answer. The reserva-

tion of rights informed Gibson of Preferred Risk's right to withdraw at any time, thus, because the facts which underlie Gibson's contention occurred after the reservation of rights was issued, they cannot be considered in determining prejudice. Furthermore, Gibson's allegation of prejudice goes to the attorney's deficient performance, not the prejudice emanating from Preferred Risk's withdrawal from the defense.

I believe that this holding, as opposed to the majority's mere vacation of certiorari, is justified both in legal principle and in public policy. The societal interest in preventing insurers from being inhibited from commencing representation on the insured's behalf is great. A decision holding that prelitigation actions such as those undertaken by Preferred Risk in the instant case constitute a "defense" would cause insurers not only to delay any action on all insureds' behalf, but to refuse to take any action at all if questions arise as to coverage under the insurance contract. Such hesitance by insurers would increase the amount of litigation in our already over-burdened courts.

For the reasons stated herein, I dissent from the majority's vacation of certiorari in this case. I am authorized to state that Presiding Justice Fletcher and Justice Sears join this dissent.

DECIDED MARCH 11, 1996.

*Wilson, Strickland & Benson, Warner R. Wilson, Jr., Sara L. Doyle,* for appellant.

*Temple, Strickland & Counts, William D. Strickland, Croy, Harris & Hammond, A. Cullen Hammond, Zimmerman & Associates, Barry L. Zimmerman, Keith F. Brandon, Carolyn V. Jordan,* for appellee.